UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| CHUBB SEGUROS PERU S.A. a/s/o Ingram Micro SAC and Saint Gobain Peru, S.A., INGRAM MICRO SAC, SAINT GOBAIN PERU, S.A., and INTCOMEX PERU SAC,<br><br>*Plaintiffs,*<br><br>- against -<br><br>M/V AS FORTUNA, her engines, boilers, etc., AS FORTUNA OPCO B.V., JAS FORWARDING SERVICES (IRELAND) LIMITED d/b/a/ Blue World Line, SHIPCO TRANSPORT INC., and ONBOARD LOGISTICS USA INC.,<br><br>*Defendants.* | 20-cv-3392 (ALC)(DF) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**RULE 56.1 STATEMENT OF UNDISPUTED
FACTS IN SUPPORT OF MOTION FOR JUDGMENT
ON THE PLEADINGS IN FAVOR OF DEFENDANT SHIPCO
TRANSPORT INC. AND/OR FOR SUMMARY JUDGMENT
AND/OR FOR PARTIAL SUMMARY JUDGMENT ON
<u>DAMAGES PURSUANT TO FRCP RULE 12(c), RULE 19 AND RULE 56</u>**

David T. Maloof, Esq.
Kipp C. Leland, Esq.
Maloof & Browne LLC
411 Theodore Fremd. Ave., Suite 190
Rye, New York 10580
Tel: (914) 921-1200
Fax: (914) 921-1023
Emails: dmaloof@maloofandbrowne.com
kleland@maloofandbrowne.com

*Attorneys for Defendant Shipco Transport, Inc*

1

Defendant Shipco Transport, Inc. (hereinafter "Shipco") respectfully submits the following list of material facts as to which it contends there is no genuine issue to be tried, pursuant to Local Civil Rule 56.1:

1) Plaintiffs allege that they are cargo owners and/or insurers of cargo aboard the vessel M/V AS Fortuna (hereinafter "Vessel"), a vessel alleged to have lost its engine power and ran aground off the coast of Ecuador on or about September 13, 2018 (the "Grounding Incident"). D.E. 22, p. 5, ¶ 17.

2) The only Plaintiff in this action who is claiming against Shipco is Intcomex Peru S.A. (hereinafter "Intcomex" or "Plaintiff"). D.E. 22 (Amended Verified Complaint), Schedule C, p. 14-15.

3) Plaintiff's case against Shipco involves an alleged claim for the reimbursement of at most $30,772.91 in salvage expenses alleged to have been incurred by the Plaintiff in a single container in connection with the alleged grounding of the Vessel. D.E. 22, Schedule C, p. 14-15.

4) The salvor who Plaintiff allegedly paid salvage for the Cargo was T&T Salvage, an independent salvor, which allegedly recovered the undamaged cargo from the vessel after the alleged grounding. Leland Dec. ¶9 and Exh. 9, p. 1 and 3.

5) The cargo for which Plaintiff is claiming against Shipco was computer parts, accessories and printers (hereinafter referred to as "Cargo"). Danes Dec. Exh. A (Bill of Lading).

6) The Cargo for which Plaintiff is claiming against Shipco suffered no physical damage. Plaintiff's Response to Shipco's Interrogatory No. 2, appended as Leland Dec. Exh. 1, p. 4.

7) Plaintiff's Complaint does not plead a claim for cargo damage under the Carriage of Goods by Sea Act ("COGSA"), nor does it even mention COGSA. D.E. 22.

8) The documents Plaintiff has produced indicate that the salvage company T&T Salvage LLC, and the owners of the cargo aboard the Vessel, agreed, without involving Shipco, to a settlement establishing that 1) the value of the cargo aboard, as recovered from the grounding, totaled $27,937,741.61, and 2) that the salvors would receive as their award, a total of $5,821,003.38, to be paid proportionately by cargo owners/insurers on a proportionate basis (per "Appendix C" to the agreement, which has not been produced by Plaintiff). Leland Dec., ¶9 and Exh. 9 (Salvage Agreement produced by Plaintiff, p. 2, ¶1-2).

9) Plaintiff alleges that it paid $30,772.91 of that amount to the salvor. Leland Dec., Exh. 1, p. 4 (response to Interrogatory No. 3).

10) The nominal Plaintiff claiming against Shipco here, Intcomex, has been admitted to not be the real party in interest on the claim, as the Cargo was insured by XL Catlin Insurance SE (hereinafter "XL"), who is suing in the name of its insured, Intcomex. Leland Dec. Exh. 2, p. 9 (Plaintiff's answer to Shipco's Request for Admission ("RFA Answer")[1] Nos. 19-23, admitting XL is the real party in interest).

11) XL was originally a named plaintiff in this action, but Plaintiff's attorneys amended their complaint to remove XL as a party. D.E. 1, p. 1 (listing XL as a plaintiff); D.E. 22, p. 1 (XL no longer a party); Leland Dec. Exh. 2, p. 8-9, RFA Answer Nos. 16-23 (Plaintiff's counsel admitting to removal of XL).

---

[1] Shipco served two Requests for Admission upon Plaintiff in this action, which were responded to and upon which Plaintiff will be relying to support this motion. Plaintiff's response to Shipco's RFA Nos. 1-30 are appended as Exhibit 2 to the Leland Declaration. Plaintiff's response to Shipco's RFA Nos. 31-44 are appended as Exhibit 3 to the Leland Declaration. Shipco will cite to Plaintiff's specific admissions pursuant to these two RFAs as "RFA Answer No. ___."

12) The payment XL made to the salvor for the Cargo was made pursuant to authority issued by an affiliated insurance company, AXA XL, a division of AXA. Leland Dec. Exh. 13, p. 1-2 (Payment authorized by Helene Polycarpou of "AXA XL, a division of AXA, 20 Gracechurch Street, London").

13) An entity identifying itself as both "XL Insurance Company SE" and "XL Catlin" with offices at 20 Gracechurch Street, London, issued a General Average Guarantee for the Cargo, which was stamped with the seal of "XL Insurance Company SE" and a copy of which is appended as Exh. 14 to the Leland Declaration. Leland Dec. ¶14.

14) In the General Average Guarantee, "XL Insurance Company SE" and "XL Catlin" agreed to "guarantee to the shipowners the payment of any contributions to general average and/or salvage and/or special charges" with respect to the Cargo. *Id.*

15) Intcomex issued a General Average Bond for the Cargo, a true copy of which is appended as Exhibit 15 to the Leland Declaration. Leland Dec. ¶15.

16) In the General Average Bond, Intcomex agreed to "pay the proper portion of any salvage and/or general average and/or special charges" with respect to the Cargo. *Id.*

17) The owner of the Vessel is AS Fortuna Opco B.V. (hereinafter "Vessel Owner"), a defendant in this action. D.E. 22, ¶8.

18) At no time did Shipco own the Vessel. Danes Dec., ¶¶3, 10 and 11; Leland Dec. Exh. 2, p. 1, RFA Answer No. 1.

19) Shipco is a Non Vessel Operating Common Carrier ("NVOCC") pursuant to 46 CFR § 512(m)(2), and is registered as a NVOCC with the Federal Maritime Commission, under License No. 8352. Danes Dec., ¶2.

20) Shipco, as an NVOCC, issued a bill of lading to the shipper, nonparty

Dachser USA Air & Sea Logistics Inc. ("Dachser"), which is identified as Shipco Bill of Lading No. CAO10452517 (hereinafter "Shipco Bill of Lading"), covering transportation of the Cargo from Miami, Florida to Callao, Ecuador. Danes Dec. ¶4 and Exh. A (Shipco Bill of Lading).

21) Dascher is a company who the cargo owner, Intcomex, hired to arrange for transportation of the cargo. Leland Dec. ¶10 and Exh. 10.

22) The Shipco Bill of Lading terms and conditions, which govern with respect to Shipco's role in the transportation of the Cargo (hereinafter "Shipco Bill of Lading Terms"), are set forth in the document M&B Doc. 12-23, a true copy of which is appended as Exhibit B to the Danes Declaration, and which Plaintiff admitted to in RFA Answer No. 31, Footnote 1. Leland Dec. Exh. 3, p. 1, (amending its response to RFA Answer No. 6 and admitting these terms cover the Cargo).

23) As the face of the Shipco Bill of Lading indicates, in the box identifying the "Vessel," Shipco had an understanding that the Cargo would ultimately be transported aboard the vessel "AS Faustina 16." Danes Dec., ¶6 and Exh. A (see box where vessel is identified).

24) Shipco booked the Cargo (along with numerous other cargoes in a 40 foot shipping container) with nonparty Seaboard Marine (hereinafter "Seaboard"), another ocean carrier, for transportation from Miami, Florida to Callao, Ecuador. Danes Dec. ¶4 and 6.

25) Seaboard, in turn, arranged for a different vessel (the "Vessel" already identified as the M/V AS Fortuna) to transport the Cargo from Miami, Florida to Callao, Ecuador. Danes Dec. ¶7.

26) Pursuant to this arrangement, Seaboard, as ocean carrier, issued a bill of lading to Shipco, under which Shipco is the Shipper, and is identified as Seaboard Bill of Lading No. SMLU5384387A ("Seaboard Bill of Lading"). Danes Dec. ¶9 and Exh. C.

27) Seaboard's bill of lading terms and conditions ("Seaboard Bill of Lading Terms"), applicable to the transportation service it provided for the Cargo, are identified and authenticated in the Declaration and appended exhibit of Ingrid Velez, Insurance and Claims Director of Seaboard. Velez Dec. ¶4 and attachment to declaration.

28) Seaboard was entitled to substitute the M/V AS Fortuna for the M/V AS Faustina 16, under ¶12 of its bill of lading terms, which are identified as "METHODS AND ROUTES OF TRANSPORTATION" which can be found on pages 9-10 of 18 of the Seaboard Bill of Lading Terms. Velez Dec. Attachment.

29) Such a clause allowing substitution of a vessel is commonly referred to as a "Liberties Clause" and is common in the maritime industry. Danes Dec. ¶8.

30) Shipco was a shipper in its relationship to Seaboard. Danes Dec. ¶10-11; Velez Dec. ¶7.

31) At no time did Shipco have any control over any aspect of the condition or operation of the Vessel, its maintenance, its crewing and/or crew training, or the physical condition and maintenance of its mechanical and navigation systems, or any of the Vessel's documents pertaining to these items. Danes Dec. ¶10-11; Velez Dec. ¶8-10.

32) Seaboard had no control over any aspect of the condition or operation of the Vessel, its maintenance, its crewing and/or crew training, or the physical condition and maintenance of its mechanical and navigation systems, or any of the Vessel's documents pertaining to these items. Velez Dec. ¶8-10.

33) It would be impossible for Shipco, one step further removed from the Vessel Owner than Seaboard was, to have any input in to the operation, maintenance, crewing, training or physical condition of the Vessel. Danes Dec. ¶9-11.

34) Seaboard was at liberty to change vessels at any time, and place the Cargo on a vessel without notifying Shipco of the change, pursuant to its Liberties Clause. Danes Dec., ¶8; Seaboard Dec., ¶4 and Attachment ¶12, pages 8-9 of 18.

35) Plaintiff has failed to produce even one document in its Initial Disclosures or otherwise to support any fault on the part of Shipco with respect to the alleged grounding. Leland Dec., Exh. 4, (Plaintiff's answer to Shipco's Request for Production No. 6, p. 6) (Plaintiff failed to produce any documents substantiating the allegation).

36) Plaintiff has failed to identify even one witness to support any fault on the part of Shipco with respect to the alleged grounding. Leland Dec., Exh. 5 (Plaintiff's Initial Disclosures, disclosing no witnesses).

37) There are no known facts which would substantiate any violation by Shipco of the International Marine Dangerous Goods Code ("IMDG Code"), which generally comes into play in covering ship fires, other than a bare mention of this code, without alleging any facts pertaining to any violation of it or how it caused any casualty here, in the Complaint. D.E. 22, ¶41-42, p. 9.

38) Plaintiff has neither produced nor identified any documents supporting the allegation that the IMDG Code was violated in its Rule 26 Disclosures. Leland Dec. Exh. 5 (no documents identified and no witnesses disclosed in Plaintiff's Rule 26 Disclosures).

39) In the maritime industry, NVOCCs have no involvement with arranging for, contracting for, or paying for salvage, which is strictly a matter between the salvor, vessel owner, and cargo owner. Danes Dec. ¶14.

40) Shipco had absolutely no involvement with arranging for, contracting for, or paying for salvage of the Cargo that Plaintiff is claiming against Shipco for. Danes Dec. ¶14.

41) The Vessel Owner has filed for Limitation of Liability in connection with the voyage at issue in Singapore (hereinafter "Singapore Limitation Proceeding"). Leland Dec. Exh. 2, p. 1-3, and Exh. 3, p. 4, RFA Answer Nos. 1-2, 4-5, and 40-41; Declaration of Joseph Tan, ¶3 and Exh. B.

42) The courts of Singapore issued an injunction against cargo claimants filing actions going beyond merely establishing liability against the Vessel Owner in connection with the alleged grounding (hereinafter "Singapore Injunction"). Leland Dec. Exh. 2, p. 1-2, RFA Answer No. 3 and Tan Dec. ¶7 and 10-13 and Exh. C, p. 2, Section 4 (true copy of Singapore Injunction).

43) XL, the real party in interest in the Intcomex claim, has an office in Singapore and does business in Singapore and is therefore subject to the Singapore Injunction. Leland Dec. Exh. 3, p. 1-3, RFA Answer Nos. 32-35.

44) An affiliate of XL, "AXA XL Insurance Co." (hereinafter referred to as "AXA XL") in fact filed a claim in the Singapore Limitation Proceeding for "mining equipment" and thus is fully aware of this Injunction and in fact a party to the lawsuit from which the Injunction originates. Tan Dec. ¶17-18 and Exh. G-H.

45) An email from AXA XL which authorized payment of the salvage for the Cargo at issue in this case identifies XL as operating out of the same office as AXA XL (20 Gracechurch St., London) and as "operating principally within AXA Group's AXA XL division" Leland Dec. ¶13 and Exh. 13, p. 1 (AXA XL authorizing payment of salvage) and p. 2 (identifying XL Catlin Services SE ("XL") as operating out of the same office).

46) Though XL could have filed a claim in the Singapore Limitation Proceeding for the Cargo owned by Intcomex which is the subject of the action in this court, XL apparently

did not. *Id*. (Intcomex cargo does not appear in claim schedule for "AXA XL Insurance Co."); Leland Dec. Exh. 3, p. 3-4, RFA Answer Nos. 38-39 (XL admits that it did not claim for this cargo in Singapore).

47) Instead, XL elected to sue, *inter alia*, Vessel Owner and Shipco in this action. Leland Dec. Exh. 3, p. 4-7, RFA Answer Nos. 42-44.

48) The Singapore Injunction does not preclude XL from filing suit against the Vessel Owner, provided that such a suit only seeks a determination as to whether the Vessel Owner is liable for the grounding. Tan Dec. ¶ 10-11.

49) Plaintiff is enjoined from seeking damages from the Vessel Owner in other courts, and is required to only seek damages from the Vessel Owner in the Singapore Limitation Proceeding. Tan Dec. ¶ 10-11.

50) Plaintiff's Amended Verified Complaint in this action exceeds that which is permitted under the Injunction, because Plaintiff seeks an award of actual money damages from the Vessel Owner. D.E. 22, p. 10-11 ("Wherefore" clause of complaint asking for money judgment against, inter alia, Vessel Owner).

51) Plaintiff has admitted in response to Shipco's Requests for Admission that the Singapore Limitation Proceeding pertaining to the Vessel exists (Leland Dec. Exh. 2, p. 1, RFA Answer No. 2).

52) Plaintiff has admitted in response to Shipco's Requests for Admission that none of the claimants in the Singapore Limitation Proceeding contested the right of the Vessel Owner to limit its liability for the grounding in that proceeding. Leland Dec. Exh. 2, p. 2, RFA Answer No. 4.

53) Plaintiff has admitted in response to Shipco's Requests for Admission that

the Vessel Owner has in fact been granted limitation of liability by the Court in Singapore. Leland Dec. Exh. 2, p. 2-3, RFA Answer No. 5.

54) Plaintiff has admitted in response to Shipco's Requests for Admission that Plaintiff could have filed a claim for the Cargo at issue here in the Singapore Limitation Proceeding, but elected not to do so. Leland Dec. Exh. 3, p. 3-4 RFA Answer Nos. 38 and 39.

55) An email produced in discovery by Plaintiff, which appears to be an email authorizing XL to pay the salvage at issue in this case, indicates that XL, the real party in interest in the claim filed in this Court ("XL Catlin Services SE") and the XL entity who claimed in the Singapore proceeding ("AXA XL Insurance Co.") are one and the same. Leland Dec. ¶ 13 and Exh. 13 (see p. 1 of the email where "AXA XL, a division of AXA" authorizes payment of salvage, and p. 2 where the same email represents that "XL Catlin Services SE" in fact "represents various regulated (re)insurance carriers…that are operating principally within AXA Group's AXA XL division…").

56) XL, the company who insured the Cargo has identified itself in the various documents as acting under at least four different variations of the same general company name, including, "XL Catlin Services SE" (Leland Dec. Exh. 2, p. 8-9, RFA Answer Nos. 16-23, admitting to insuring the Cargo; Leland Dec. Exh. 13, p. 2, email paying salvage) and "XL Insurance Company SE" (Leland Dec. Exh. 14, signing the General Average Bond) and "AXA XL, a division of AXA" (Leland Dec. Exh. 13, p. 1, email paying salvage) and "XL Catlin" (Leland Dec. Exh. 14, signing General Average Bond).

57) The actual insurance company who insured the Intcomex cargo, regardless of what specific name it does business under ("XL Catlin Services SE" or "XL Insurance Company SE" or "AXA XL, a division of AXA" or "XL Catlin" or "AXA XL Insurance Co." or otherwise),

authorized Plaintiff's attorneys to file the Verified Complaint (D.E. 1) and the Amended Verified Complaint (D.E. 22) in this Court, notwithstanding the Injunction issued by the Singapore court.

58) AXA XL Insurance Co. – the insurance entity who is actually claiming in the limitation proceeding in Singapore - actually paid the salvage which Plaintiff is seeking recovery for in this action. Leland Dec. ¶ 13 and Exh. 13 (email from AXA XL authorizing payment)

59) XL and Intcomex also filed suit against the Vessel Owner in the Netherlands with respect to this casualty. Leland Dec. Exh. 2, p. 10-11, RFA Answer Nos. 26-29.

60) The court in Singapore found in a published decision that none of the parties who filed claims in the Singapore Limitation Proceeding contested the Vessel Owner's entitlement to limit its liability to the amount of the security that it posted with the court in Singapore. Tan Dec. ¶ 14-15 and Exh. D, p. 1.

61) The Shipco bill of lading terms governing this shipment specify, as a contract term, that Shipco is entitled to the same benefit of the limitation of liability, and the same other legal defenses to liability, to which the Vessel Owner is entitled under applicable law. Danes Dec. Exh. B (Shipco Bill of Lading Term 6.3 at M&B Doc. 14, and 7.2.A at M&B Doc. 15); Leland Dec. Exh. 2, p. 3-8, RFA Answer Nos. 8-15 (Plaintiff's admission to cited Terms); Leland Dec. Exh. 3, p. 1, RFA Answer No. 31, Footnote 1 (admitting to the entirety of the Shipco Bill of Lading Terms covering the Cargo for which it is claiming).

62) The Shipco bill of lading terms governing this shipment also specify, as a contract term, that Shipco is entitled to limit its liability, if there is any liability to the Plaintiff, to $500 in total if COGSA does not apply. Danes Dec., Exh. B (Shipco Bill of Lading Terms, M&B Doc 16, Clause 8(2)).

11

63) The definitions section of the bill of lading terms define "Merchant" as including "the shipper, the consignee, the receiver of the Goods, the holder of this Bill of Lading, any person having a present or future interest in the Goods or any person acting on behalf of any of the above mentioned persons." Danes Dec., Exh. B, p. 1.

64) Accordingly, the Plaintiff Intcomex, and the Plaintiff's insurer XL, are included in the term "Merchant." *Id*.

65) The Vessel Owner has no presence in New York and the voyage was neither from nor to New York or the Southern District of New York. D.E. 22, p. 3, ¶8 and p. 12-14 (Schedules A-C).

66) The pleadings indicate that this specific dispute has no connection with New York but rather involves a voyage between Miami, Florida and Callau, Peru. D.E. 22, p. 12-14; Schedule A, B, and C.

67) The Vessel Owner is neither incorporated in New York nor does it have a principal place of business in New York and is thus outside this Court's personal jurisdiction and cannot be joined. D.E. 22 (Vessel Owner is incorporated in the Netherlands with its registered office in the Netherlands).

68) The Vessel Owner has not been served with a copy of the Verified Complaint. (See Docket for Index No. 20-cv-3392).

69) The Vessel Owner has not been served with a copy of the Amended Verified Complaint, filed on August 10, 2020. (See Docket for Index No. 20-cv-3392).

70) The time for the Plaintiff to effect service of the Amended Verified Complaint (D.E. 22) on the Vessel Owner lapsed as of 90 days from filing on August 10, 2020, which is November 9, 2020 under Fed. R. Civ. P. 4(m) and 6(a)(1)(c).

Dated: Rye, New York  
February 25, 2021

MALOOF & BROWNE LLC

By: _____
   David T. Maloof, Esq.
   Kipp C. Leland, Esq.
411 Theodore Fremd Avenue - Suite 190
Rye, New York 10580
Tel: (914) 921-1200
Fax: (914) 921-1023
E-mails: dmaloof@maloofandbrowne.com
         kleland@maloofandbrowne.com

*Attorneys for Defendant*
*Shipco Transport, Inc.*

F:\WP-DOCS\1907.05\Pleadings\Motion to Dismiss\022321 DRAFT 2 Rule 56.1 Statement.docx